# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JOHN N. BARTOLOTTI, DOCKET NO.: 2:26-cv-00421-JMA-JMW

Plaintiff,

-against- AMENDED COMPLAINT

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER ALFRED R. CASCIO, POLICE OFFICER MICHAEL POLLY, POLICE OFFICER BRIAN MARTONE, POLICE OFFICER TERRELL CARTER BALLIER, POLICE OFFICER KEITH COHEN, POLICE OFFICER NICHOLAS DeSANTIS, POLICE OFFICER HAROON FAZAL, POLICE OFFICER CHRISTIAN RICH, POLICE OFFICER CHRISTOPHER RITCHIE, POLICE OFFICER KENNETH TYMECK, POLICE OFFICER KENYON KRAPF, JR., SERGEANT TIMOTHY VITIELLO, DETECTIVE WILLIAM P. McEVOY, OFFICERS JOHN DOE(S) 1-10 who are known by name to the Defendants but as of yet are not fully known to Plaintiffs,

***JURY TRIAL DEMANDED***

Defendant.

----------------------------------------------------------X

**PLAINTIFF, JOHN N. BARTOLOTTI,** by and through his attorneys, CAPETOLA & DIVINS, P.C., as and for his Amended Complaint, against the Defendants, respectfully states and alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a civil action for monetary relief including past economic loss, compensatory damages, punitive damages, disbursements, costs and fees brought under 42 U.S.C. § 1983 grounded in rights secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and other New York State causes of action. This is an action against the COUNTY OF NASSAU (hereinafter referred to as "COUNTY"), NASSAU COUNTY POLICE DEPARTMENT (hereinafter referred to as "NCPD"), POLICE OFFICER ALFRED R. CASCIO (hereinafter referred to as "Defendant CASCIO"), POLICE OFFICER MICHAEL POLLY (hereinafter referred to as "Defendant POLLY"), POLICE OFFICER BRIAN MARTONE (hereinafter referred to as "Defendant MARTONE"), POLICE OFFICER TERRELL CARTER BALLIER (hereinafter referred to as "Defendant BALLIER"), POLICE OFFICER KEITH COHEN (hereinafter referred to as "Defendant COHEN"), POLICE OFFICER NICHOLAS DeSANTIS (hereinafter referred to as "Defendant DeSANTIS"), POLICE OFFICER HAROON FAZAL

(hereinafter referred to as "Defendant FAZAL"), POLICE OFFICER CHRISTIAN RICH (hereinafter referred to as "Defendant RICH"), POLICE OFFICER CHRISTOPHER RITCHIE (hereinafter referred to as "Defendant RITCHIE"), POLICE OFFICER KENNETH TYMECK (hereinafter referred to as "Defendant TYMECK"), POLICE OFFICER KENYON KRAPF, JR. (hereinafter referred to as "Defendant KRAPF"), SERGEANT TIMOTHY VITIELLO (hereinafter referred to as "Defendant VITIELLO"), and certain of the unnamed police officers and Detectives, and other personnel ("JOHN DOES 1-10"), in his individual and official capacity, and John Does 1-10 (collectively referred to as "Defendant Officers") , in their individual and official capacity, for violating the civil rights and constitutional rights of Plaintiff, JOHN BARTOLOTTI (hereinafter referred to as "BARTOLOTTI", by engaging in unlawful conduct including false and unlawful arrest, excessive force, failure to intervene, malicious prosecution, abuse of process, fabrication of evidence, negligence, unfair and improper practices, mental abuse, recklessness, carelessness, intentional actions of the agent employees, and intentional infliction of emotional distress that resulted in physical and emotional harm. All acts were committed under the color of law, thus depriving Plaintiff of rights secured by the Constitution and laws of the State of New York.

2. Plaintiff, BARTOLOTTI, was falsely arrested, falsely charged, falsely jailed, falsely detained, deprived of his freedom, abused, subjected to violence, subjected to unauthorized touching, without reason, legal basis or justification by the COUNTY, NCPD, Defendant CASCIO Defendant POLLY, Defendant MARTONE, Defendant BALLIER, Defendant COHEN, Defendant DeSANTIS, Defendant FAZAL, Defendant RICH, Defendant RITCHIE, Defendant TYMECK Defendant KRAPF, Defendant VITIELLO, and certain of the unnamed police officers and Detectives, and other personnel John Does 1-10 ("JOHN DOES 1-10") in their individual and, all who knew or should have known, or became aware that there was no merit to the arrest, jailing, imprisonment, charging and the continuance of said actions and that pursuit of same was illegal.

3. The initial incident of the within matter arose on or about November 27, 2024, at approximately 4:40 p.m. at or around the vicinity of 7 Highland Avenue Glenwood Landing in the County of Nassau State of New York.

4. On or about November 27, 2024, on the eve of Thanksgiving, Plaintiff, JOHN N. BARTOLOTTI, was falsely accused, falsely charged, falsely arrested, falsely detained, falsely jailed, denied information, denied basic rights, and subjected to wrongful and negligent actions by Defendants. He was denied his freedom despite the clear evidence showing he should be freed, and was not afforded basic civil and constitutional protections, with the full complicity of COUNTY, NCPD, Defendant CASCIO, and Defendant VITIELLO in their individual and official capacity, and John Does 1-10, in their individual and official capacity, and others.

5. Plaintiff, BARTOLOTTI, sustained severe damages, physical and emotional injuries, including but not limited to, violation of his civil rights, injury to his mental health, permanent damage to his good name and reputation, humiliation, shame, embarrassment, extreme mental and emotional harm and stress, invasion of his person, as well as the unjustified loss of his freedom, good standing in the community, comfort, income, career opportunities and other damages not yet fully ascertained.

## JURISDICTION

6. This action is brought pursuant to 42 U.S.C. § 1983, and 1988, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343 (3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law.

7. All conditions precedent to instituting the lawsuit have been complied with in a timely manner including but not limited to the filing of a Notice of Claim with COUNTY. In response to the Notice of Claim, the COUNTY held a 50-h hearing and failed to settle the matter or respond to all inquiries since the hearing was held.

8. Venue herein is proper under 28 U.S.C. § 1391 (b); the cause of action arose in the Eastern District of New York.

9. That prior hereto Plaintiff in conjunction with his State claims filed a Notice of Claim in compliance with General Municipal Law Section 50 et. seq.

10. That more than 30 days have elapsed and Defendants have failed and refused to pay or adjust same.

**PARTIES**

11. During all times relevant to this Complaint, the Plaintiff JOHN N. BARTOLOTTI was, and still is, a citizen of the United States, residing in the County of Nassau, State of New York.

12. That Defendant, COUNTY OF NASSAU, is a duly constituted municipal corporation of the State of New York and is and was the employer of Defendant CASCIO Defendant POLLY, Defendant MARTONE, Defendant BALLIER, Defendant COHEN, Defendant DeSANTIS, Defendant FAZAL, Defendant RICH, Defendant RITCHIE, Defendant TYMECK, Defendant KRAPF, Defendant VITIELLO, and certain of the unnamed police officers and Detectives, and other personnel ("JOHN DOES 1-10")

13. That Defendant NASSAU COUNTY POLICE DEPARTMENT is an agency of the COUNTY.

14. Upon information and belief, during all times relevant to this Complaint, Defendant CASCIO was and is a citizen and resident of the State of New York. Defendant CASCIO at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity. The NCPD and COUNTY are herein intended to be one suable entity and any reference to NCPD is a reference to the suable entity which is COUNTY.

15. Upon information and belief, during all times relevant to this Complaint, Defendant POLLY was and is a citizen and resident of the State of New York. Defendant POLLY at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

16. Upon information and belief, during all times relevant to this Complaint, Defendant MARTONE was and is a citizen and resident of the State of New York. Defendant MARTONE at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

17. Upon information and belief, during all times relevant to this Complaint, Defendant BALLIER was and is a citizen and resident of the State of New York. Defendant BALLIER at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

18. Upon information and belief, during all times relevant to this Complaint, Defendant COHEN was and is a citizen and resident of the State of New York. Defendant COHEN at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

19. Upon information and belief, during all times relevant to this Complaint, Defendant DeSANTIS was and is a citizen and resident of the State of New York. Defendant DeSANTIS at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

20. Upon information and belief, during all times relevant to this Complaint, Defendant FAZAL was and is a citizen and resident of the State of New York. Defendant FAZAL at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

21. Upon information and belief, during all times relevant to this Complaint, Defendant RICH was and is a citizen and resident of the State of New York. Defendant RICH at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

22. Upon information and belief, during all times relevant to this Complaint, Defendant RITCHIE was and is a citizen and resident of the State of New York. Defendant RITCHIE at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

23. Upon information and belief, during all times relevant to this Complaint, Defendant TYMECK was and is a citizen and resident of the State of New York. Defendant TYMECK at all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

24. Upon information and belief, during all times relevant to this Complaint, Defendant KRAPF was and is a citizen and resident of the State of New York. Defendant KRAPF at

all times herein mentioned was a Police Officer employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

25. Upon information and belief, during all times relevant to this Complaint, Defendant VITIELLO was and is a citizen and resident of the State of New York. Defendant VITIELLO at all times herein mentioned was a Sergeant employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity.

26. "JOHN DOES" 1-10 were at all times herein mentioned police officers and/or detectives, in their individual and official capacities, employed by both COUNTY and NCPD under the direction of Defendant's COUNTY and NCPD, and were acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY and/or NCPD.

27. Upon information and belief, at all times relevant to the June 19, 2025 arrest alleged herein, Defendant DETECTIVE WILLIAM P. McEVOY (Shield No. 1382, Command 6SQ) was and is a citizen and resident of the State of New York. Defendant McEVOY at all times herein mentioned was a Detective employed by the COUNTY, was under the direction of the NCPD and COUNTY, and was acting in furtherance of the scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages, of the State of New York and/or COUNTY, and acting in his individual and official capacity. McEVOY was the arresting and reporting officer for the June 19, 2025 arrest of Plaintiff.

28. During all times relevant to this Complaint, the Defendants were acting under color of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the COUNTY.

29. During all times relevant to this Complaint, the Defendants, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of BARTOLOTTI, and while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper, and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

30. During all times relevant to this Complaint, the Defendants, and each of them, had the power and the duty to restrain the other Defendants and prevent them violating the law and the rights of the Plaintiff, but each of the Defendants failed and refused to restrain the other Defendants and thereby became a party unlawfully subjecting the Plaintiff to harm and denial of basic rights.

31. During all times relevant to this Complaint, Defendants had the power and the duty to conduct a full and fair investigation of the NCPD Officers. The Defendants failed to timely and sufficiently investigate the actions of the NCPD Officers as stated herein.

## STATEMENT OF FACTS

32. At all times relevant to this Complaint, BARTOLOTTI resided in Nassau County, New York.

33. BARTOLOTTI is the primary caretaker of his 95-year-old mother BERTA BARTOLOTTI who resides at 7 Highland Avenue, Glen Head, New York 11547 (hereinafter referred to as "7 Highland Avenue"). BARTOLOTTI visits his mother daily and is responsible for her daily care, medical appointments, and well-being.

34. For several years, the Bartolotti family and a neighboring household located at 9 Highland Avenue have been involved in a longstanding and contentious neighbor dispute, which has resulted in repeated, unfounded complaints to NCPD by the neighboring party.

35. It is worth noting that the complainant's brother-in-law is an NCPD Officer, a fact well known within the neighborhood. Upon information and belief, this relationship has

contributed to preferential treatment and bias by NCPD officers in their repeated, unjustified responses to complaints involving BARTOLOTTI.

36. On November 21, 2024, following one such complaint, BARTOLOTTI was arrested by members of the NCPD. That arrest arose from baseless allegations made by the same neighboring complainant. As a result of this arrest, the Honorable Judge Geoffrey N. Prime of the Nassau County District Court issued an Order of Protection (hereinafter referred to as "the Order") in favor of the complainant residing at 9 Highland Avenue.

37. The Order, issued on November 21, 2024, expressly permitted incidental contact and specifically authorized BARTOLOTTI to travel to and from 7 Highland Avenue, the residence of his ninety-five-year-old mother, for whom he provides full-time care. In placing this provision on the record, Judge Prime expressly recognized Mr. Bartolotti's essential role as his mother's caretaker and the necessity of his continued presence at that location.

38. On November 22, 2024, BARTOLOTTI's defense counsel proactively contacted the Sixth Precinct of the NCPD to ensure the precinct was fully apprised that the Order—issued on November 21, 2024—contained an express incidental-contact provision permitting Mr. Bartolotti's presence on Highland Avenue, including at 7 Highland Avenue. In light of the acrimonious history between the complainant and BARTOLOTTI, counsel specifically raised advised NCPD that the Order expressly permitted BARTOLOTTI to travel to and from 7 Highland Avenue. NCPD confirmed that the Order had already been received, acknowledged awareness of both parties and the surrounding circumstances, and affirmatively assured counsel that the precinct would be notified accordingly.

39. Notwithstanding said notice, NCPD and Defendant Officers continued to engage in intimidation and unlawful conduct toward BARTOLOTTI, acting in knowing disregard of the Order which ultimately effectuated his false arrest on November 27, 2024—the arrest that is the subject of this action.

40. In an effort to protect himself and to prevent further misinterpretation, intimidation or false allegations by law enforcement, BARTOLOTTI took the reasonable and prudent step of wearing a body-camera device and installing a dash-camera in his vehicle so that any future

encounters with NCPD, NCPD Officers and the complainant neighbor could be accurately and objectively documented.

41. On November 23, 2024, the complainant again contacted 911, falsely alleging that BARTOLOTTI was violating the Order by being present at 7 Highland Avenue. Responding NCPD Defendant Officers reviewed the Order on scene and initially confirmed that BARTOLOTTI was lawfully permitted to be present at that location. No arrest was made. The responding officers further advised the complainant and his wife that BAROTLOTTI was not in violation of the Order, as any contact was incidental and expressly authorized under the Order's incidental-contact provision applicable to 7 Highland Avenue.

42. On November 27, 2024, Mr. Bartolotti went to 7 Highland Avenue to pick up his ninety-five-year-old mother in order to take her to dinner and complete last-minute holiday shopping, as Thanksgiving was the following day. Mr. Bartolotti briefly entered Highland Avenue, assisted his mother from the residence into his vehicle, and departed. His total time on Highland Avenue was approximately four minutes and thirty-nine seconds.

43. Shortly thereafter, BARTOLOTTI was informed by his sister that several NCPD officers were present outside 7 Highland Avenue. Seeking clarification, BARTOLOTTI contacted the NCPD Sixth Precinct and spoke with an officer believed to be a John Doe Officer with the last name Murphy. During that call, BARTOLOTTI was instructed to return to 7 Highland Avenue immediately.

44. BARTOLOTTI returned to 7 Highland Avenue, at approximately 4:45 p.m. Upon his arrival Defendant CASCIO immediately placed BARTOLOTTI under arrest stating. BARTOLOTTI was in violation of the Order for driving past the complainant's home and honking his horn.

45. Defendant CASCIO proceeded to point to BARTOLOTTI's body camera and asked him, "is that videoing right now." BARTOLOTTI did not give the officers permission to take his property, to physically touch him and most certainly did not agree to have his freedom and liberty restricted by these officers.

46. At this point Defendant CASCIO forcefully turned MR. BARTOLOTTI around and informed BARTOLOTTI "you are under arrest again" and directed BARTOLOTTI to stop recording the encounter.

47. BARTOLOTTI was then handcuffed on the side of the street, while the block was fully lit up with police lights, sirens and spotlights. BARTOLOTTI remained in this position for an unreasonable time which caused him extreme pain and emotional duress.

48. Defendant CASCIO knowingly began interrogating BARTOLOTTI, without reading him his rights or Miranda Warnings. BARTOLOTTI was informed by NCPD Officers he was not free to leave and was in the custody of NCPD. BARTOLOTTI requested Defendant CASCIO contact his defendant counsel. Defendant CASCIO ignored BARTOLOTTI's request, and continued his interrogation without BARTOLOTTI's counsel present or reading him his Miranda Rights.

49. Defendant CASCIO continued his interrogation of BARTOLOTTI and advised him of the basis for the police presence and ensuing investigation. Defendant CASCIO stated that, upon his arrival at the scene, the complainant's wife presented him with alleged cell-phone video she claimed depicted the incident.

50. Defendant CASCIO informed BARTOLOTTI that he allegedly reviewed the video; and although this video purportedly formed the basis for Mr. Bartolotti's arrest, it was never secured, preserved, or logged into evidence.

51. As a result of the excessive, unnecessary, and unlawful force used by NCPD Defendant Officers, all of which constituted extreme and outrageous conduct, BARTOLOTTI was injured.

52. Defendant MARTONE turned BARTOLOTTI's body camera off while it was on his person and despite objection from BARTOLOTTI. At 4:49 p.m., BARTOLOTTI informed Defendant POLLY that his sister called his defense attorney, and he is no longer talking to NCPD, and Defendant Officers.

53. Despite MR. BARTOLOTTI telling NCPD Defendant Officers he would no longer talk to them, Defendant RITCHIE and Defendant MARTONE, continued speaking to and questioning BARTOLOTTI about the Order and his conduct surrounding the Order.

54. At approximately 4:49 p.m., BARTOLOTTI informed Defendant CASCIO that the Order they were referring to that he allegedly violated allowed him to be present at 7 Highland Avenue.

55. While in handcuffs Defendant CASCIO incorrectly told MR. BARTOLOTTI "you are not allowed to be near the home" of complainant. BARTOLOTTI again informed Defendant CASCIO the Order expressly allowed him to be at 7 Highland Avenue.

56. At approximately 5:05 p.m., BARTOLOTTI stated to Defendant CASCIO "my attorney would like to speak to you", while Defendant POLLY stated to Defendant CASCIO, Defendant VITIELLO and BARTOLOTTI that he reviewed the Order the complainant gave to him and that order had an incidental contact provision. Defendant CASCIO stated to BARTOLOTTI "incidental is like if you guys are going to Stop and Shop and you're like both in the fruit aisle at the same time and you're like oops that's incidental not this not driving past his (complainants) house."

57. Defendant POLLY, continued to inform Defendant CASCIO, Defendant VITIELLO and JOHN DOES 1-10 that they "have another order that looks a little different than this". Defendant VITIELLO states "I don't care what their Order says, I am relying on the Order in front of me."

58. While this was unfolding, BARTOLOTTI and his ninety-five-year-old mother were left outside in the cold, pleading with NCPD Defendant Officers to uncuff him as he did not commit any crime.

59. At approximately 5:06 p.m., MR. BARTOLOTTI again informs Defendant CASCIO and Defendant VITIELLO that his attorney would like to speak to him. Defendant CASCIO and Defendant VITIELLO dismiss BARTOLOTTI and inform him "your attorney is for you" and "based on my obligation from a court order we have to place you under arrest for criminal contempt."

60. BARTOLOTTI, at approximately 5:07 p.m., informs Defendant CASCIO and Defendant VITIELLO that the same incident occurred the day prior, and he was not arrested because of the incidental contact provision. Defendant VITIELLO dismissed BARTOLOTTI's claim and informed him that it was "irrelevant."

61. As shown on Defendant VITIELLO'S bodycam, Defendant POLLY informs Defendant VITIELLO the Order shown to him when he first responded had an incidental contact provision. Defendant VITIELLO dismissed Defendant POLLY and arrested JOHN BARTOLOTTI.

62. At approximately 5:08 p.m. BARTOLOTTI's sister, Susan Bartolotti, arrived back at 7 Highland Avenue, and informed Defendant VITIELLO, Defendant CASCIO, Defendant MARTONE, and Defendant POLLY, that BARTOLOTTI's attorney was on the phone. Susan informed OFFICER CASCIO the Order allowed MR. BARTOLOTTI to be present at his mother's home, and Defendant CASCIO again incorrectly informed BARTOLOTTI there is "no stipulation allowing him to be here."

63. Again, Defendant CASCIO, Defendant VITIELLO and Defendant MARTONE, take no steps to confirm whether NCPD Defendant Officers had the correct Order after being informed several times the Order issued allowed BARTOLOTTI to be present at 7 Highland Avenue.

64. At approximately 5:10 p.m., while BARTOLOTTI is still outside in handcuffs, Defendant POLLY, is informed by BARTOLOTTI'S defense counsel that the only Order issued allowed for incidental contact. The Order always included this provision and there was never a prior order stating otherwise although responding NCPD Defendant Officers state they are going through records to see if another Order was issued.

65. At approximately 5:56 p.m, Defendant VITIELLO and Defendant CASCIO inform BARTOLOTTI that despite the incidental contact provision, now BARTOLOTTI violated the Order when BARTOLOTTI drove past the complainants' home to get to 7 Highland Avenue and beeped his horn.

66. Later on, NCPD Defendant Officers then go on to change the reason why BARTOLOTTI was being arrested as he was electronically monitoring the protected party by wearing a body camera. Defendant CASCIO and Defendant VITIELLO stated that is in fact a violation of the Order and he is going to be placed under arrest.

67. Defendant POLLY, Defendant MARTONE, and John Does 1-10 remained on the scene during this encounter, failing to intervene while the other Defendant officers continued to harass, physically restrain, and wrongfully detain an elderly man (with two forms of cancer), on his way from his mother's home with no probable cause that he had engaged in any unlawful actions or committed any crime.

68. All of these officers were acting in concert, and none of them held each other accountable for the physical, mental, or emotional pain they were inflicting on BARTOLOTTI.

69. At no time did Defendants refrain from their abusive actions. They continued to restrain BARTOLOTTI, continued to keep him handcuffed, and at no time did they loosen the handcuffs on his person.

70. MR. BARTOLOTTI was falsely detained and thereafter subjected to multiple searches and then was wrongfully charged on Thanksgiving Eve with the crime of Criminal Contempt in the Second Degree. After being held for over eighteen (18) hours, MR. BARTOLOTTI was arraigned on Thanksgiving morning, and then unceremoniously released from custody with no apology, or further details as to why he was treated in the fashion he was.

71. Thereafter, Defendants continued their violation of BARTOLOTTI as they maliciously prosecuted BARTOLOTTI on charges of criminal contempt in the second degree as a shield to coverup their wrongful and unlawful actions.

72. Pursuant to the New York State General Municipal Law, BARTOLOTTI served a Notice of Claim upon the COUNTY within the 90-day statutory period, giving Notice of these claims to the extent required by Law.

73. Pursuant to Section 50-h of the New York State General Municipal Law, BARTOLOTTI appeared for a hearing, and yet the County of Nassau has not responded to BARTOLOTTI's request for updates since.

74. Over thirty (30) days have expired without the COUNTY remedying, settling, and adjusting this claim.

75. As a direct and proximate result of the false charges and being actually innocent of the crimes for which he was accused, BARTOLOTTI was forced to defend himself in the Nassau County District Court. This directly and proximately caused BARTOLOTTI to expend significant amounts of time and money, as it required him to hire a criminal defense attorney, prepare a legal defense, make numerous appearances in Court, and go to trial.

76. This process also exacted a significant emotional toll from BARTOLOTTI, causing him to experience intense fear, embarrassment, humiliation, stress, anxiety, frustration, and anger for the duration of his prosecution and afterwards.

77. BARTOLOTTI's criminal prosecution lasted from October 27, 2025-October 31, 2025. The trial was to begin earlier in the month but due to "officer unavailability," the matter was continuously adjourned.

78. Throughout the malicious prosecution of BARTOLOTTI, he had to attend dozens of appearances in the Nassau County District Court with his criminal defense attorney, and motions were made to dismiss the matter prior to trial. As a direct and proximate result of these efforts, BARTOLOTTI incurred and paid legal defense fees in excess of eighty thousand ($80,00.00) dollars.

79. BARTOLOTTI's criminal prosecution was maliciously and needlessly prolonged by the intentional non-compliance of NCPD to cooperate with the Nassau County District Attorney's Office and provide the necessary discovery in a timely manner.

80. NCPD and Defendant Officers maliciously and intentionally caused BARTOLOTTI's prosecution to be needlessly continued and prolonged.

81. As a result of the actions mentioned herein, BARTOLOTTI did suffer extreme monetary loss.

82. As a result of the actions mentioned here, BARTOLOTTI did suffer extreme emotional loss.

83. Defendants had no legal authority whatsoever to effectuate the arrest of BARTOLOTTI.

84. The arrest and detention of BARTOLOTTI by the Defendants was unlawful.

**THE SUBSEQUENT ARREST OF JUNE 19, 2025**

85. The Order (Order No. 2024-006217, issued by the Honorable Geoffrey N. Prime) remained in effect through November 21, 2025, and at all relevant times contained the same incidental-contact provision expressly authorizing BARTOLOTTI to travel to and from 7 Highland Avenue, the residence of his ninety-five-year-old mother, for whom he provides full-time care.

86. Notwithstanding that provision, and notwithstanding NCPD's prior knowledge—established in November 2024—that the Order permitted BARTOLOTTI's presence at and travel to 7 Highland Avenue, the NCPD arrested BARTOLOTTI a second time, on or about June 19, 2025, for alleged criminal contempt of the same Order.

87. The June 2025 arrest arose from a complaint by the same protected party, Walter Puhalski of 9 Highland Avenue, and his wife, Kathleen Puhalski—the same household whose repeated, unfounded complaints gave rise to the November 2024 arrest that is the subject of this action.

88. The sworn charging instruments underlying the June 2025 arrest are materially inconsistent as to when the alleged conduct occurred. The supporting depositions and the Information allege the conduct occurred on June 9, 2025; the arrest report's own case-data field states the offense "Occurred On" June 18, 2025; and the offense block of the arrest report states June 9, 2025. The arrest itself was not effected until June 19, 2025at least ten days after the earliest alleged date of the underlying conduct.

89. The conduct alleged in the June 2025 charging instruments—that BARTOLOTTI walked from 7 Highland Avenue toward the vicinity of the Puhalski driveway—describes conduct incidental to BARTOLOTTI's lawful and expressly authorized presence at his mother's residence at 7 Highland Avenue, and did not constitute a violation of the Order.

90. The June 2025 Information represented that the alleged incident was captured on the complainant's home-surveillance video. Upon information and belief, that video was

produced in the criminal proceeding and does not depict the conduct alleged in the sworn charging instruments—it does not show BARTOLOTTI walking onto or approaching the complainant's property, inspecting the complainant's trash, or standing at the end of the complainant's driveway. Rather, upon information and belief, the video shows only that BARTOLOTTI stood in the public street in the vicinity of his mother's home at 7 Highland Avenue—conduct that did not violate the Order and that was consistent with its incidental-contact provision.

91. Upon information and belief, the Defendant Officers who effected the June 2025 arrest and swore out the charging instruments either failed to review the home-surveillance video before representing under oath that it captured the alleged violation, or mischaracterized its contents. The material discrepancy between the conduct sworn to in the charging instruments and the conduct actually depicted in the produced video further establishes the absence of probable cause for BARTOLOTTI's arrest and prosecution.

92. The June 2025 arrest was effected by Defendant McEVOY and other members of the NCPD Sixth Precinct—the same command responsible for the November 2024 arrest—and was made without probable cause to believe that BARTOLOTTI had violated the Order or committed any crime.

93. Following his arrest, BARTOLOTTI was transported involuntarily to Nassau University Medical Center for a psychiatric fitness-for-confinement evaluation.

94. The June 2025 arrest followed, and upon information and belief was undertaken in retaliation for, BARTOLOTTI's constitutionally protected activity, including his service of a Notice of Claim upon the COUNTY and his pursuit of legal redress arising from the November 2024 arrest.

95. The criminal proceeding commenced by the June 2025 arrest, docketed as No. 2025CR354689 in the District Court of the County of Nassau, First District, terminated in BARTOLOTTI's favor, the charge having been dismissed in its entirety, a final disposition not inconsistent with BARTOLOTTI's innocence.

96. As a direct and proximate result of the June 2025 arrest and prosecution, BARTOLOTTI again suffered loss of liberty, involuntary transport for psychiatric evaluation, legal expense, emotional distress, humiliation, and reputational harm.

97. The June 2025 arrest and prosecution were not an isolated event but part of a continuing pattern and practice by the COUNTY and the NCPD of arresting BARTOLOTTI without probable cause upon the unfounded complaints of the Puhalski household, in knowing disregard of the terms of the Order, and of tolerating and ratifying such arrests, as further alleged in the Sixth Cause of Action.

**AS AND FOR PLAINTIFFS FIRST CLAIM FOR RELIEF FOR FALSE ARREST (1983) AS AGAINST ALL DEFENDANTS**

98. Plaintiff BARTOLOTTI repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

99. At all relevant times, Defendants: NCPD and Defendant Officers, including but not limited to Defendant CASCIO and NCPD John Does 1–10, were acting under color of state law within the meaning of 42 U.S.C. § 1983.

100. On November 27, 2024, Defendants: NCPD and Defendant Officers intentionally seized and arrested BARTOLOTTI without a warrant and without probable cause, in violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

101. At the time of BARTOLOTTI's arrest, Defendants knew or reasonably should have known that Plaintiff's presence at 7 Highland Avenue was expressly authorized by a valid court order permitting incidental contact at that location, and that BARTOLOTTI had complied fully with the terms of that Order.

102. Defendants lacked probable cause to arrest Plaintiff, as the allegations relied upon were demonstrably false, contradicted by the available video evidence, and premised on knowingly incomplete, reckless, or deliberately indifferent investigative conduct, including but not limited to the failure to review exculpatory evidence in its entirety and the failure to preserve the very evidence purportedly forming the basis for the arrest.

103. Defendants' conduct constituted an unreasonable seizure of Plaintiff's person and a deprivation of liberty without due process of law, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

104. The actions of Defendants were not the result of mistake or mere negligence, but were undertaken intentionally, recklessly, and/or with deliberate indifference to Plaintiff's constitutional rights, and were part of a pattern of intimidation and unlawful enforcement directed at Plaintiff.

105. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff BARTOLOTTI suffered loss of liberty, emotional distress, humiliation, damage to reputation, incurred attorneys' fees and legal expenses, and suffered other compensable injuries.

106. Defendants' conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's clearly established constitutional rights, thereby entitling Plaintiff to compensatory damages, punitive damages against the individual Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper, in an amount to be determined at trial but not less than THREE MILLION ($3,000,000.00) DOLLARS plus punitive damages and attorney's fees.

**AS AND FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR FAILURE TO SUPERVISE (1983) AGAINST THE COUNTY, NCPD, DEFENDANT VITIELLO, AND OFFICERS JOHN DOES #1-10**

107. Plaintiff BARTOLOTTI repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

108. At all relevant times, Defendant VITIELLO and Defendant Officers John Does 1–10 were supervisory officials within the NCPD and were responsible for the training, supervision, oversight, and discipline of subordinate officers, including Defendant CASCIO.

109. Defendant VITIELLO and Defendant Officers John Does 1–10 had actual and/or constructive knowledge of the repeated false allegations made against BARTOLOTTI, the existence and scope of the Order expressly permitting BARTOLOTTI's presence at 7

Highland Avenue, and the escalating pattern of police involvement targeting BARTOLOTTI.

110. Despite this knowledge, Defendant VITIELLO and Defendant Officers John Does 1–10 failed to take reasonable steps to supervise, intervene, correct, or prevent Defendant CASCIO's unconstitutional conduct, including the initiation and execution of BARTOLOTTI's warrantless arrest without probable cause on November 27, 2024.

111. The failure to supervise was not an isolated oversight, but constituted deliberate indifference to the risk that BARTOLOTTI's clearly established constitutional rights would be violated, particularly in light of prior police responses confirming BARTOLOTTI's lawful presence and the absence of any probable cause.

112. Defendant COUNTY, through its policymakers and supervisory personnel, including Defendant VITIELLO and Defendant Officers John Does 1–10, maintained customs, practices, and/or informal policies of inadequate supervision, tolerance of unlawful arrests, and failure to correct known constitutional violations, which directly caused or substantially contributed to the violation of Plaintiff's rights.

113. As a direct and proximate result of Defendants' failure to supervise, BARTOLOTTI was unlawfully arrested, deprived of his liberty, and subjected to emotional distress, humiliation, reputational harm, and financial losses, including attorneys' fees and legal expenses.

114. Defendants' conduct was intentional, reckless, and/or grossly negligent, and was undertaken with deliberate indifference to BARTOLOTTI's constitutional rights, entitling BARTOLOTTI to compensatory damages, punitive damages against the individual Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems just and proper.

## AS AND FOR PLAINTIFF'S THIRD CLAIM OF ACTION 42 U.S.C. 1983: MALICIOUS PROSECUTION AS AGAINST ALL DEFENDANTS

115. Plaintiff BARTOLOTTI repeats and realleges each and every allegation contained in paragraphs 1 through 100 of this Complaint as if fully set forth herein.

116. Defendants, Defendant CASCIO, Defendant VITIELLO, and NCPD John Does 1–10 initiated, caused the initiation of, and continued a criminal proceeding against BARTOLOTTI by knowingly providing false, misleading, and incomplete information to prosecutors, resulting in Plaintiff being charged with Criminal Contempt in the Second Degree.

117. Defendants lacked probable cause to initiate or continue the criminal proceeding, as Plaintiff's conduct—traveling to and briefly stopping at his mother's residence at 7 Highland Avenue—was expressly authorized by a valid court order permitting incidental contact at that location.

118. Defendants acted with malice, as evidenced by their knowing disregard of the Court Order, reliance on demonstrably false allegations, failure to consider readily available exculpatory evidence, and continuation of the prosecution despite prior police determinations confirming Plaintiff's lawful presence.

119. The criminal proceeding terminated in Plaintiff's favor when the Jury returned a verdict of not guilty at trial, constituting a final disposition indicative of Plaintiff's innocence.

120. As a direct and proximate result of Defendants' malicious prosecution, BARTOLOTTI was arrested, arraigned, deprived of his liberty, subjected to restrictions on his freedom, and forced to expend significant resources defending against baseless criminal charges.

121. BARTOLOTTI suffered severe emotional distress, humiliation, reputational harm, loss of liberty, and financial damages, including attorneys' fees and related legal expenses, all of which continue to this day.

122. Defendants' conduct was intentional, malicious, and undertaken with reckless disregard for Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments.

123. As a result of the foregoing, Plaintiff seeks compensatory damages in an amount to be determined at trial, but not less than THREE MILLION ($3,000,000.00) DOLLARS,

punitive damages against the individual Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, costs, and such other relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION 42 U.S.C. 1983: ABUSE OF PROCESS AS AGAINST ALL DEFENDANTS

124. Plaintiff BARTOLOTTI repeats and realleges each and every allegation contained in paragraphs 1 through 109 of this Complaint as if fully set forth herein.

125. Defendants OFFICER CASCIO, and SERGEANT VITIELLO intentionally, recklessly, and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading criminal complaint against BARTOLOTTI.

126. The false criminal complaint pushed forth by Defendants, COUNTY, NCPD, and Defendant Officers was done as a result of Defendants' attempt to cover up the fact that they wrongfully and arbitrarily determined BARTOLOTTI, as violating the Order that expressly permitted him to be at 7 Highland Avenue on November 27, 2024.

127. Defendants use of the criminal process for the purpose of covering up their own incompetence and inability to investigate without any probable cause or reasonable belief in criminal or statutory violations, amounts to an abuse of the criminal process which was initiated and used to the detriment of BARTOLOTTI and solely for the illegitimate purpose of harassing and embarrassing Plaintiff causing him financial and emotional hardship.

128. The false arrest and malicious prosecution of BARTOLOTTI, was perpetrated by NCPD, Defendant CASCIO, Defendant VITIELLO. Their use of this criminal process was intended to punish BARTOLOTTI, to protect them from discipline, to protect them from the loss of their employment and to cause BARTOLOTTI financial and social harm. The ulterior or collateral purposes included teaching BARTOLOTTI a lesson for refusing to be abused and inflict economic harm and exact retribution from BARTOLOTTI for his exercise of asking for his attorney.

129. As a consequence, Plaintiff, BARTOLOTTI, was falsely arrested and maliciously prosecuted due to Defendants willful, and intentional acts done to harm BARTOLOTTI, to deprive him of his rights, and cover up the wrongful acts and abuse to which BARTOLOTTI was subjected.

130. As a consequence of Defendants' wrongful actions, negligent behavior, and violation of federal laws, BARTOLOTTI was deprived of his freedom, made to suffer injuries, and subjected to great fear, terror, personal humiliation, and degradation. Plaintiff continues to suffer mental and emotional distress, as well as physical pain as a result of the aforesaid unlawful conduct of the Defendants.

131. In doing so, Defendants caused serious and unjustifiable harm to BARTOLOTTI.

132. That by reason of the foregoing, BARTOLOTTI has been damaged in a sum greater than THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs, and attorney's fees.

## AS AND FOR A FIFTH CAUSE OF ACTION 42 U.S.C. 1983 FAILURE TO INTERVENE AS AGAINST ALL DEFENDANTS

133. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 118 of this Complaint with the same force and effect as though fully set forth herein.

134. Defendant CASCIO Defendant POLLY, Defendant MARTONE, Defendant BALLIER, Defendant COHEN, Defendant DeSANTIS, Defendant FAZAL, Defendant RICH, Defendant RITCHIE, Defendant TYMECK, Defendant KRAPF, Defendant VITIELLO, and certain of the unnamed police officers and Detectives, and other personnel ("JOHN DOES 1-10") violated Plaintiff, BARTOLOTTI's, constitutional right to equal protection under the laws protected by the Fourteenth Amendment to the Constitution of the United States.

135. Defendants, Defendant POLLY, Defendant MARTONE, Defendant BALLIER, Defendant COHEN, Defendant DeSANTIS, Defendant FAZAL, Defendant RICH, Defendant RITCHIE, Defendant TYMECK, Defendant KRAPF, and certain of the unnamed police officers and Detectives, and other personnel ("JOHN DOES 1-10") had a duty to intervene and had a reasonable opportunity to intervene and stop their fellow officers from wrongfully detaining and falsely arresting Plaintiff, BARTOLOTTI.

136. As a consequence, BARTOLOTTI was falsely arrested, maliciously prosecuted and forced to attend numerous court proceedings. Additionally, he was assaulted and publicly humiliated.

137. As a consequence of Defendants' wrongful actions, negligent behavior, and violation of federal laws, Plaintiff was deprived of his freedom, made to suffer injuries, and subjected to great fear, terror, personal humiliation, and degradation. Plaintiff continues to suffer mental and emotional distress, as well as physical pain as a result of the aforesaid unlawful conduct of the Defendants.

138. In doing so, Defendants caused serious and unjustifiable harm to BARTOLOTTI.

139. That by reason of the foregoing, BARTOLOTTI has been damaged in a sum greater than THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs, and attorney's fees.

140. The officers present at the June 19, 2025 arrest of BARTOLOTTI, including Defendant McEVOY and John Does present, had a duty and a reasonable opportunity to intervene to prevent the wrongful detention and false arrest of BARTOLOTTI and failed to do so, and are thereby liable for failure to intervene as set forth in this Cause of Action.

**AS AND FOR A SIXTH CAUSE OF ACTION 42 U.S.C. 1983: MUNICIPAL LIABILITY AS AGAINST THE COUNTY AND NCPD**

141. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 125 of this Complaint as if fully set forth herein.

142. At all relevant times, Defendant COUNTY, acting through the NCPD, its policymakers, supervisors, and commanding officers, maintained policies, customs, and practices that caused the deprivation of Plaintiff's clearly established constitutional rights.

143. The constitutional violations suffered by Plaintiff were not isolated or accidental, but were the foreseeable result of Nassau County's longstanding customs, policies, and practices, including but not limited to:

a. Failing to adequately supervise and discipline police officers who engage in unlawful arrests, improper investigations, and misuse of orders of protection;

b. Tolerating and ratifying arrests made without probable cause, even where officers are on actual notice that the underlying conduct is lawful;

c. Permitting officers to rely on demonstrably false or incomplete allegations while disregarding readily available exculpatory evidence; and

d. Failing to require the preservation, review, and disclosure of material evidence forming the basis of arrests and criminal charges.

144. Upon information and belief, the COUNTY maintains a deficient misconduct review and disciplinary process which routinely exonerates officers through cursory, outcome-driven investigations, including but not limited to:

a. Preparing investigative reports that reflexively justify officer conduct regardless of objective evidence to the contrary;

b. Failing to meaningfully credit civilian witnesses while uncritically accepting officer narratives; and

c. Accepting police reports at face value despite inconsistencies, omissions, and evidence contradicting the stated justification for arrest.

145. Nassau County policymakers knew or should have known that these policies, customs, and practices created a substantial risk that individuals such as Plaintiff would be unlawfully seized, falsely arrested, and maliciously prosecuted, yet failed to take corrective action, evidencing deliberate indifference to constitutional rights.

146. The County's failure to properly train, supervise, discipline, and control NCPD officers—including Defendant Cascio and supervisory Defendants—was a moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights, including his unlawful arrest and prosecution on November 27, 2024.

147. As a direct and proximate result of Nassau County's unconstitutional policies, customs, and practices, Plaintiff BARTOLOTTI suffered loss of liberty, emotional distress, humiliation, reputational harm, and financial losses, including attorneys' fees and legal expenses.

148. Defendant County of Nassau is therefore liable to Plaintiff under 42 U.S.C. § 1983 for the constitutional violations committed by NCPD officers acting pursuant to municipal policy, custom, or practice, as articulated in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

149. Plaintiff seeks compensatory damages in an amount to be determined at trial, together with attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

150. The June 19, 2025 arrest of BARTOLOTTI—effected by the same command, upon the same protected party's unfounded complaint, and in disregard of the same Order—constitutes further evidence that the COUNTY and NCPD maintained policies, customs, and practices of tolerating and ratifying arrests made without probable cause even where officers were on actual notice that the underlying conduct was lawful, and of failing to supervise and discipline officers accordingly, which policies, customs, and practices were a moving force behind the violation of BARTOLOTTI's constitutional rights on both November 27, 2024 and June 19, 2025.

**AS AND FOR PLAINTIFF'S SEVENTH CLAIM OF ACTION 42 U.S.C. 1983-FABRICATION OF EVIDENCE AS AGAINST ALL DEFENDANTS**

151. Plaintiff BARTOLOTTI repeats and realleges each and every allegation contained in paragraphs 1 through 134 of this Complaint as if fully set forth herein.

152. Defendants: Defendant VITIELLO, Defendant CASCIO, Defendant MARTONE, acting under color of state law and in concert with one another, knowingly agreed to and participated in a course of conduct designed to deprive Plaintiff of his clearly established constitutional rights, including his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

153. As part of this agreement, Defendants intentionally ignored, suppressed, and failed to consider evidence favorable to Plaintiff, while relying on demonstrably false allegations and incomplete information in order to justify Plaintiff's unlawful arrest and continued prosecution.

154. Upon information and belief, prior to officers responding to the November 27, 2024 incident, the protected party communicated directly with Defendant MARTONE via his personal cellular telephone, thereby compromising the objectivity and integrity of the police response and contributing to the unlawful actions taken against Plaintiff.

155. Defendants further conspired to deprive Plaintiff of due process by engaging in a coordinated effort to conceal misconduct, including failing to preserve material evidence, preparing and submitting false or misleading police reports, and advancing a narrative they knew or should have known was false, all for the purpose of insulating themselves from accountability and preventing Plaintiff from obtaining redress for their unlawful conduct.

156. The individual Defendants acted with personal animus and improper motive, outside the scope of any legitimate law enforcement objective, and with reckless disregard for Plaintiff's constitutional rights.

157. Defendant COUNTY, through the NCPD, is liable for the acts of the individual Defendants, as their conduct was enabled, tolerated, and ratified by inadequate supervision, failure to discipline, and policies or customs that permitted officers to act with impunity.

158. As a direct and proximate result of Defendants' conspiracy and unconstitutional conduct, Plaintiff was unlawfully seized, falsely arrested, subjected to criminal process without probable cause, and deprived of liberty without due process of law.

159. Plaintiff suffered severe emotional distress, humiliation, reputational harm, physical and psychological injury, and financial loss, including attorneys' fees and related legal expenses, all of which continue to the present.

160. Defendants' actions were intentional, willful, malicious, and undertaken in reckless disregard of Plaintiff's clearly established constitutional rights, entitling Plaintiff to compensatory damages, punitive damages against the individual Defendants, attorneys' fees pursuant to 42 U.S.C. § 1988, costs, and such other relief as this Court deems just and proper, in an amount to be determined at trial but not less than THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AS AND FOR PLAINTIFF'S EIGHTH CLAIM OF ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER STATE LAW AS AGAINST ALL DEFENDANTS**

161. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 144 of this Complaint with the same force and effect as fully set forth herein.

162. The COUNTY, NCPD, and Defendant Officers, through their conduct, acts and omissions as set forth in the above pleaded allegations, acted outrageously and beyond the bounds of decency, for their above stated, respected roles in: (a) the wrongful detainment, manhandling, false arrest, intimidation and public humiliation of Plaintiff and (b) the concealment, cover-up and failure to redress the wrongs done to Plaintiff.

163. The COUNTY, NCPD, and Defendant Officers, committed the above stated reprehensible, extreme, and outrageous action against Plaintiff, with full knowledge that their conduct could cause severe and extreme emotional distress.

164. Said emotional harm, with psychological physical symptoms manifesting therefrom, did in fact occur in this case, in that Plaintiff was debilitated, terrified, humiliated and caused to suffer fear for his life.

165. As a consequence of Defendants' wrongful actions, intentional, negligent and reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was seriously injured, and was subjected to great fear, terror, personal humiliation and degradation suffered and continues to suffer from physical pain and impairment, mental and emotional distress, as a result of the aforesaid unlawful conduct of Defendants.

166. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AS AND FOR PLAINTIFF'S NINTH CAUSE OF ACTION 42 U.S.C. § 1983 — FALSE ARREST (JUNE 19, 2025 INCIDENT) AS AGAINST DEFENDANT McEVOY AND JOHN DOES INVOLVED IN THE JUNE 2025 ARREST**

167. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

168. On June 19, 2025, Defendant McEVOY and the John Doe officers involved in that arrest intentionally seized and arrested BARTOLOTTI without a warrant and without probable cause, in violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

169. At the time of the arrest, those Defendants knew or reasonably should have known that BARTOLOTTI's presence in the vicinity of 7 Highland Avenue was expressly authorized by the incidental-contact provision of the same Order of which NCPD had been on notice since November 2024, and that BARTOLOTTI had not violated the Order.

170. As a direct and proximate result, BARTOLOTTI suffered loss of liberty, emotional distress, humiliation, reputational harm, and legal expense, entitling him to compensatory damages, punitive damages against the individual Defendants, and attorneys' fees pursuant to 42 U.S.C. § 1988.

**AS AND FOR PLAINTIFF'S TENTH CAUSE OF ACTION 42 U.S.C. § 1983 — MALICIOUS PROSECUTION (JUNE 19, 2025 INCIDENT) AS AGAINST DEFENDANT McEVOY AND JOHN DOES INVOLVED IN THE JUNE 2025 ARREST**

171. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

172. Defendant McEVOY and the John Doe officers involved in the June 2025 arrest initiated, caused the initiation of, and continued a criminal proceeding against BARTOLOTTI—the charge of Criminal Contempt in the Second Degree, No. 2025CR354689—by knowingly providing false, misleading, and materially incomplete information, and without probable cause.

173. That proceeding terminated in BARTOLOTTI's favor, the charge having been dismissed in its entirety, a disposition not inconsistent with innocence.

174. Defendants acted with actual malice, as evidenced by their knowing disregard of the Order's incidental-contact provision, their reliance on demonstrably inconsistent

charging instruments, and the material discrepancy between the conduct sworn to and the conduct depicted in the produced video.

175. As a direct and proximate result, BARTOLOTTI suffered the injuries set forth above, entitling him to compensatory damages, punitive damages against the individual Defendants, and attorneys' fees pursuant to 42 U.S.C. § 1988.

**AS AND FOR PLAINTIFF'S ELEVENTH CAUSE OF ACTION 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION (JUNE 19, 2025 INCIDENT) AS AGAINST DEFENDANT McEVOY AND JOHN DOES INVOLVED IN THE JUNE 2025 ARREST**

176. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

177. BARTOLOTTI engaged in constitutionally protected activity, including the service of a Notice of Claim upon the COUNTY and the pursuit of legal redress for the November 2024 arrest.

178. Upon information and belief, the June 2025 arrest and prosecution were motivated in substantial part by that protected activity and were undertaken to retaliate against, punish, and deter BARTOLOTTI from pursuing his claims.

179. The Defendants' retaliatory conduct would deter a person of ordinary firmness from exercising his First Amendment rights and did in fact injure BARTOLOTTI, entitling him to compensatory damages, punitive damages against the individual Defendants, and attorneys' fees pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a. First Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

b. Second Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

c. Third Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

d. Fourth Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

e. Fifth Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

f. Sixth Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

g. Seventh Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

h. Eighth Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

i. Ninth Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

j. Tenth Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

k. Eleventh Count: in excess of THREE MILLION ($3,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees.

l. Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

m. An Order granting such other legal and equitable relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: Williston Park, New York
August 10, 2026

Respectfully submitted,
CAPETOLA & DIVINS, P.C.

By: **ALEXANDRA D. MULE**
ALEXANDRA D. MULE, ESQ.
*Attorneys for Plaintiff*
2C Hillside Avenue
Williston Park, New York 11596
516-746-2300